Good morning, Your Honors, and may it please the Court. Todd Gamlin, representing the appellant and plaintiff below, E&J Gallo Winery. This is an appeal of a June 24, 2005, order of the District Court in which the District Court denied Gallo's motion for preliminary subjunction to enjoin the defendant, Andina Licores, of pursuing a lawsuit that Andina had commenced against Gallo in the courts of Ecuador. Do we know any more about the status of that proceeding? Yes, Your Honor. Let me — My understanding is Gallo prevailed at the trial level? Yes, Your Honor. Let me just give you a brief summary of what has happened. On August 8, the trial court, Court No. 2, issued its order dismissing the claim — not dismissing it, claiming that the action was a nullity. That was Exhibit A to our request for judicial notice. The order was that the — what was the nullity? It was called — it was called a nullity because the court lacked jurisdiction in light of the forum selection clause. It wasn't — in Ecuador, it wasn't a judgment because it wasn't addressing the merits of the claim. It was a nullity because that court didn't have jurisdiction, and it was basically referring Andina to the courts in California to resolve the dispute. That has significance for purposes of an appeal in Ecuador. Now, did — did the — did the order itself stop right there? It didn't try to move the case to California. No, it could not. It just — just stated that it has no jurisdiction because of the forum selection clause. Yes. It basically dismissed the action as a nullity. And so, therefore, and since that time, what happened, there were a variety of events that occurred in the court of first instance or the trial court, if you will. Those are set forth in our request for judicial notice as Exhibits B through J. Now, an appeal was filed in Ecuador of this August 8 ruling. How the appeal process works in Ecuador is that the court of first instance, the trial court, Court Number 2 in this case, has to certify the appeal. Then it goes up to the court of appeals. That appeal was filed in August of 2005, but it wasn't certified by — by a court of first instance because of a variety of steps that Andina had taken until, I believe, it was November or December of 2005. Now, what has happened in the case is, since the August 8 ruling, on August 10, Andina files a new action in the court of first instance to recuse Judge Number 2, the judge that issued the ruling, on the grounds the judge didn't rule properly. That action gets heard before another judge, Judge Number 29. At the same time, before that action gets served, Andina files an action before Judge Number 2 to revoke the August 8 ruling and for clarification. That motion gets denied. He then, after the revocation action, the Judge 29 action, to remove, to recuse Judge Number 2, is served on Judge Number 2. Andina files another motion to revoke the August 8 ruling, this time before Judge Number 29. That motion gets denied by Judge Number 29. Now, let's keep in mind that you have Judge 29 over here who's deciding whether or not Judge Number 2 should be recused. In the meantime, the main action, the action that was presumably dismissed, now gets reassigned to another judge because Judge Number 2 can't hear it. That's Judge Number 24. Judge 29 – Andina files a third motion to revoke the August 8 ruling before Judge Number 24. Now, that motion doesn't get ruled upon before the appeal gets certified. After the appeal gets certified, or then, that's when Andina takes the next step. And this is Exhibit K to our most recent supplemental request of judicial notice. Andina files a lawsuit against Judge Number 2, suing the judge for damages for $30,000 based on the way he ruled – made his August 8 ruling. The point we're trying to make with all of this, Your Honor, is the mere – merely because Gallo prevailed in the August 8 ruling, Andina continues to engage in litigation conduct, which makes a preliminary injunction necessary. Well, before you get to your argument, though, let me understand, then, the current status. You brought us – is that – is that all that's happened now? Yeah. As of right now – So the motion – the motion to recuse before Judge 29 is still pending or not? No. Excuse me. One thing. That motion has been denied. Okay. That motion's been denied. So now the case, to the extent it gets sent back down to the court of first instance, it would go to Judge Number 2. Assuming, again – assuming Andina doesn't try something else. And is there something pending before Judge 24? That motion, he no longer has jurisdiction of the motion to revoke because the – the appeal's been certified. Jurisdiction now moves up to the court of appeals. So now the action, if you will, is before the court of appeals. And some other Judge 39 or something has this damage suit? Yes. That has to be reassigned. That case will proceed along because that is unaffected by the appeal. Okay. All right. So that – I'm glad we got to that point because that was going to be some of my argument. The – That's – your argument is that that's a reason not to – for a district court such as this not to defer to the Ecuadorian court. That is a reason why, yes, and also that that is a reason showing that there is still damage, irreparable damage, or the risk of irreparable damage, that Gallo's being exposed to. Because we're – Your argument is it'd be one thing if you simply had the action of a single trial court in Ecuador that, in fact, recognized the forum selection clause and used it as a vehicle to dismiss. If that's all we had standing alone, it would be a different case. It would be a different case. Well, it would be a different case from the purposes of Gallo and this particular instance. It's not a different case with respect to the issues regarding the standards for anti-suit injunctions when you have a forum selection clause. Because that, Your Honor, is an issue that doesn't just affect Gallo. That affects virtually every company in the United States that has entered into a forum selection clause. Let me go back for a second. I thought that one of the points of your rendition was to show that, in fact, this is still a live case and it's not moved. And I – that's what I was thinking. But you have – does it – why does it show it's – the foreign forum is futile? I understand all the rest of your arguments, and I'm not ignoring them, but I thought you were indicating that it was futile for you to proceed in a foreign forum. You've prevailed thus far, even though it's not – I don't know that we're making the argument that it's futile. But what we're saying is that the foreign action exposes Gallo to a variety of risks. True. The court – so far, Court Number 2 dismissed the case. But who knows what Andina is going to do in the courts of appeal? How many different motions is it going to file there? The courts of appeal can do a variety of things in this case. Of course. So – but that's no different from any foreign jurisdiction. Anybody has risk of litigation anywhere. There's – what is the peculiar risk that you see out of this court system? In Ecuador? Yes. Well, for example, we've talked about the due process problem we had in this particular case. Now, one could argue, well, you want – so – but the problem is we're still up on appeal. The court of appeals in this case could do a variety of things. One, it could declare a nullity is not an appealable order. Two, it could – it could affirm the district court – the court of first instance. Or three, it could rule on the merits right then and there. So that is a risk that we are still – that Gallo is still exposed to. And that is why an injunction is not a dead issue at this point. Yes. No, I understand that argument. But I gather you're not arguing at this point that there is something inherent within the court system in Ecuador that would make it different from any other foreign jurisdiction and inherently suspect. Let me give you an example. We had a case that was involving a tribal jurisdiction. And ordinarily, you were to exhaust your tribal remedies before going into district court. And we said, well, if they have a non-functioning system, you don't have to do that. That's not your allegation here. You're just saying the fact that there's a functioning system, we still are exposed to risk and, therefore, to enforce the – we would deprive the forum selection clause of its vitality if we didn't have the injunction. Is that the essence of what you're saying? The essence of it is, one, you have – you technically do have a non-functioning system to the extent that it is going to apply a decree such as Decree No. 1038A in the manner that it has. There are issues that Gallo has concerns about. We don't have a factual record for them about the functioning of the Ecuador courts. But that – we can't – we don't have a record. That, as you might imagine, that's very difficult evidence to obtain. Our position is that given the forum selection clause, and the reason people enter into forum selection clauses is to avoid this kind of problem. So let me ask – could I ask you a question, if I could break in here? In the trial court down south, there were, I think, findings made that your opponent actually knew where you were and swore they did not. They knew – they said they could not serve you when they knew that you had appointed an attorney. And, in fact, those findings were made by the trial court. Is that correct? That is correct, Your Honor. In fact, I would say – I would go a step further. I would say that every – virtually every argument that Andina made in this court and in the court in Ecuador as to support his action were rejected by the court in Ecuador. Okay. Well, I'm focusing right now on inappropriate conduct and findings made by a trial court that, in fact, your opposition company apparently – the trial court found was not telling the truth and was what we would call here perpetrating a fraud on the court. Was this raised in the district court? And what I have in mind is that these are equitable cases involving equitable results, and we have a longstanding rule that people that want equitable results have to come in with clean hands. If that finding can be accepted in the trial court, it would seem to me that it would be very difficult for an argument to be made that hands are clean in this case. Was that raised in the trial court in this case, in the district court? Well, the unclean hands – just so I'm clear, Your Honor, the unclean hands you're talking about would be Andina's unclean hands. Right. I think – yeah. The facts relating to Gallo – Why don't you start by saying yes or no it was raised in district court? Yes, it was raised in district court, and here's how. We explained to the district court that Andina knew where Gallo's whereabouts were because there were letters. There was a letter to April 19 from Gallo to Andina. The fact of the matter is that Gallo and Andina had worked together for 20 years. The fact of the matter is two letters from Andina were sent to Gallo in Modesto. The fact of the matter is that – so they knew about it. What they did – what Andina said to the court down south to get the corridor or guardian appointed was, we don't know where Gallo is located in Ecuador. That was the little twist they put into it. That's the unclean hands. Because as the court in Ecuador said, you knew full well where they were located, and the statute you're trying to invoke by saying in Ecuador doesn't apply. So clearly, Andina was guilty of unclean hands in the district court. What did the district court do with that? The district – well, the district court – Considered or rule on it or anything? No, the district – basically, the district court relied on issues of – concerns of comedy and said, I'm going to let the court in Ecuador resolve that issue. That's part of the problem we have here, is that a lot of the facts that we presented to the court, it said in light of comedy, I don't – I'm not going to deal with it. I'll let the court in Ecuador deal with it. Thank you. But it was, in fact, raised. Absolutely, Your Honor. If you look at the declaration – if you look at our memorandum, and if you also look at the declarations of Mr. Skoll, he talks about the letters that were referred to. And we talk about – and Dr. Perez, in his declaration, who – he's the expert in Ecuadorian law, talks about what the law in Ecuador requires. Is there a copy of the trial court ruling where the trial court made specific statements? I read it in the briefs. Is that in the record? Well, the Court's June 24 order is clearly in the record. Okay. And where the statements that – the due process argument that I believe the Court makes – or where he addresses the due process issues. If the Court will bear with me one minute, I'll try. I was wondering – this is the record of the trial court down south. Oh, I'm sorry. I'm sorry. The record of the trial court down south – I'm sorry. I thought you meant the district court's decision. Perhaps, Megan, I should repeat the question one more time, and I'm sure I can give you an answer. Well, I assume that, from what I read, that the trial court down south actually made findings as to what they knew and did not know. And I wondered if that is in the record before us. That would be Exhibit A. Exhibit A. The request for judicial notice, and if you – the Court looks – I apologize. The English translation, which we provided, is not numbered. But if the Court – I could reference – refer the Court to – please bear with me one minute – starting around pages 8 – excuse me – 7 through 11. If you count 7 pages in, starting with a paragraph B, it says that Andina knew Gallo's domicile and it should have served Gallo properly. It talks about how Gallo's due process rights were denied. And that's where I would look to. Okay. Thank you. Your Honor, I think that the briefs reveal that there are two major issues presented on this appeal. The first is, what are the proper legal standards that a district court is to apply when ruling on a motion for an anti-injunction suit when the foreign action has been filed in violation of a form selection clause, and also in – and it's prosecuted in a manner that's in violation of the due process rights of the party seeking the injunction? And more specifically, the issue I think focuses on is, to what extent do notions of comedy outweigh this country's policies of either form selection clauses or due process rights? The second issue, and that is an issue that relates not just to Gallo, but again, to every company that does business with a form selection clause. Second issue is, can the district court's denial of Gallo's injunction, request for injunction, be upheld on the grounds that Gallo hasn't somehow met what we would call the traditional requirements for a preliminary injunction? That is, the irreparable harm, probability of success on the merits, serious questions going to the merits, balance of hardship continuum. That, I think, we've addressed to a large degree in the discussions about what's going on in the Ecuador action. With the time I have left, Your Honors, let me just say – let me sort of summarize what this case is about and why these issues are important, not just to Gallo, but to other companies as well. Form selection clauses are important tools in commerce, as recognized by the Supreme Court in the Bremen and the Carnival Cruise cases, as well as the cases by this circuit, which have followed those cases. Gallo and Endina entered into an agreement. They had a bargain. Their bargain was that, as in every agreement, they allocated the risk of how litigation was going to be – they allocated risk, one risk of which was how this litigation was going to be – how litigation between the parties was going to be handled, and that is any cause of action would be filed solely in the courts of California. Endina blatantly thumbed its nose at that agreement, at that bargain, and they surreptitiously filed a lawsuit in Ecuador, and they refused to serve Gallo in the manner that the parties had agreed to, that is, by use of CT Corporation. The injustice here is that if district courts will not issue preliminary injunctions under the circumstances of this case, form selection clauses are basically rendered meaningless. And secondly, the Endinas of the world are rewarded, basically, for breaching those form selection clauses. Merely by filing an action first and breaching the agreement, and if you follow the district court's rationale, they are being rewarded. And I would suggest to the Court that this result, this consequence, is in violent contradiction to what the Supreme Court has said in both the Brehman and the Carnifle Cruz cases. The – Your Honors, I see I have about a – slightly over a minute left. I think what I'd like to do is reserve what time I have left and turn the – turn the podium over to counsel for Endina. Thank you. Thank you for your argument. I'll hear from Endina at this time. Good morning, Justices. My name is Dave Petrie, a Borton, Petrini, and Conron for the Respondent, Endina. You're probably used to appearing before the California Court of Appeal as one of our friends once said, there's no justice at the Ninth Circuit. They're all judges. All right. Your Honor, is that sufficient? That's fine. All right. I do want to say this, first of all, introductory-wise. When Judge Ishii ruled on the original TRO prelim application, no discovery had been done in our case here in the United States. And so much of the record, as you may glean, is basically on allegations that were made in the initial complaint and a lot of back and forth. We know a little bit more now, since we've had an opportunity to do some discovery in this country, and also the progress of the Ecuadorian action. And let me say this first about my understanding of the procedural status in I think Mr. Gamlin was fairly close on how he described the procedural status. And let me preface my comments about Ecuador, as your Honors may know, I'm not a lawyer in Ecuador, so what I learn is from attorneys in Ecuador, from my client, much like Mr. Gamlin is learning. But I think he did a fairly good job of a recitation of what the fact pattern is down there. My understanding is that the finding, which was truly in Gallo's favor, it's called a nullity rather than a judgment there, is on appeal to what they call the superior court, would be our court of appeals in Ecuador. And that is a review that's done without deposition testimony or further evidence. It essentially goes up on the record like we do here pretty much on that. And my understanding is that's the procedural status of the underlying substantive case. Number two, while it may sound strange to us about suing a judge on a recusal matter, it appears the law in Ecuador allows that because the complaint by Andina there was, gee, your Honor, we think that the law of protections requires you to either enter a judgment one way or the other. Either Andina loses or Andina gets money, rather than simply declare what you're doing a nullity. And the judgments are supposed to be on a verbal summary trial like that quickly given after the case is submitted. That didn't happen. And so the claim, if you will, as I understand it by the Ecuadorian lawyers on behalf of my client, is you've issued an order called a nullity, but you've not really ruled on the case. And we wish to appeal that. And we think that's wrong. And strangely enough, under their law, from what I can glean, when you make a what we would call a motion to recuse a judge here, you can do that in Ecuador, but you can make a monetary damage claim against him, which is, from my understanding, has been denied. But the appeal issue remains on appeal to the superior court there. We now have got more pleadings, more evidence in the case in Ecuador. And certainly to this date, all of Gallo's concerns about Ecuador being a kangaroo court and not giving them justice have turned out to be they have protected Gallo's rights. And my client is exercising its attempt to simply appeal through the Ecuadorian process there. But that isn't Gallo's argument. Gallo's argument is as it should be done here. Even if they lose to your client, they want to lose in this jurisdiction. Well, I understand that, Your Honor. But there's also the Ecuadorian Protection Act, which Andina takes the position that it is not repealed retroactively such that the case cannot proceed down there. There's also part of the Protection Act, Article V, that says it's appropriate for Andina to file this type of case in its native country. Well, there's – there are those issues. And the district court thought that he was apparently incompetent to make those decisions, and the Ecuadorian judges would have to do that. I've had some of these cases as a district court judge, and I'm afraid I did not feel that humility. Are there some cases that say that we have to defer and have a case in foreign law decided by a foreign judge that we can't make that decision? What was the basis of the district court's decision that he couldn't make the decision on the foreign law but had to be made down in Ecuador? Well, my understanding, Your Honor, was at the time, bear in mind, we were under – I think also I was drawing the impression that there was going to be a ruling in the Ecuadorian action shortly when we were there in June and or July. And in fact, there was one about a month later. So I think what Judge Ishii was looking at, number one, was it seems like in the verbal summary trial proceeding in Ecuador, they're getting close to being done. So I have some hesitancy just to intercede, to try to issue an injunction to stop the judgment. He said the reasons he gave for not going is, number one, it was filed first in Ecuador. Correct. And I – so that's quickest to the court reason. Second, the Ecuador courts are more confident to decide the effect of the decree. And then he went on to a strong feeling of comedy, which may or may not be consistent with the Ninth Circuit cases. And then said it doesn't make any difference because he can move for a change of venue in Ecuador and have it sent to the United States. Those were the reasons. Right. Now, taking the first reason, filed first, is there a case that says that we decide a choice of venue, choice of law issues, based upon who gets to the court – which courthouse first? No. Not that I'm aware of, Judge. The trend or the tendency is that most of the cases where there is a first file, however, may be the case that goes forward. But in specific answer to your question, no. I can cite you no direct case that says you can't stop the first that's filed. But I would point out that Andina filed it there because under the Protection Act, if it's own country, that's where it says that it should be filed. Not in the United States of America. And we would not be here but for the interplay between the Protection Act and the forum selection clause about what would be the appropriate jurisdiction for us to be in. I understand. So the question has to do with the Protection Act, which has now been – no longer exists, but your client's argument was it existed at the time we entered the contract, so therefore it's a part of the contract. Correct, Your Honor. So I don't quite understand the position that the district judge here could not have made that decision based upon testimony about the Ecuadorian law, et cetera, as we do it frequently. Is – I'm trying to find is there some help you can give us from a case that says it's appropriate under circumstances such as this to allow it to be done in Ecuador as distinguished from doing it himself as the contract indicated. Well, Your Honor, going kind of behind the record, if you will, about what had happened, see, Andina was making its initial appearance on jurisdictional grounds, and then Gallo also at the same time was having this injunction matter heard, and it was all being thrown at Judge Ishii initially with very little deposition testimony, very little documentation completed, which now we have a lot more of. So he's looking at it as a TRO application or a preliminary injunction application on day one, and he learns that the Ecuadorian action is supposedly near conclusion. And so I believe that it was his perception as – and it's referenced a little bit in his order, well, they appear close. How would I like it if somebody stopped my court if I was, you know, five days from entering a judgment or what have you? And so what I think he thought was, well, you know, we don't have any hard evidence yet here about contract formation issues, about where things were signed, about who was sending what, where, where title passed. All of these are issues that, you know, potentially could bear on the jurisdictional issue. And so I think with what he had, he was more hesitant, perhaps, than maybe you might be under other circumstances if he had a bigger evidentiary body of facts in front of him at the time. And I'm just speculating, Judge, a little bit when I say that, but he's coming right out of the chute with, you know – I didn't find anything either. Now, the next thing, he gave a pretty strong help to comedy. And were the Ninth Circuit and the Supreme Court cases discussed with him at the time he made the decision? Was that all opened up? Well, yes, Your Honor. The Unterwesser case, the Sunbell case from our Eastern District Court, the Seattle Totems case, which is your case, the Bremer case from the U.S. Supreme Court, it was – it was briefed. I cited the Jones case on a franchisee deal with Pennsylvania v. California. So those things were in the pleadings in the underlying action. Correct. And the final thing he said was that Gallo can go down to Ecuador and move for a change of venue. Do you know any law, of any law in Ecuador, that says that Gallo could go down and get an Ecuadorian court to enter an order transferring a case to a different country? No, Judge. And I think perhaps the use of the term venue may have been an inappropriate choice of words. Maybe it should have been jurisdiction, because as – at least as we know in our system, we're talking venue, we're talking something that's subject to our jurisdiction. So I didn't – and I don't think Mr. Gamlin followed either. I kind of agree with him on that. I don't understand really what he was driving at when he's talking about motion for change of venue, because we're not talking about moving it from one court in Ecuador to Quito, for example, in Ecuador. So I didn't follow that myself, and I'll be the first to admit that. That's a good answer. Now, we've talked about the four reasons he used. Now, one reason he didn't talk about – and I'm not blaming you for this. You're up here. You're not down in Ecuador. Yes, sir. But the issue came up. This is an Ecuador Bay action. And what – how should we treat what happened in Ecuador and the findings in the trial court down there in relationship to your client's action there?  And I'm happy to talk, Your Honor, about clean hands versus uncleaned hands in equity. Right. The first claim, as you know, Your Honor, is, well, you appointed a curador where you And, again, I'll preface what I'm saying by my understanding of the Ecuadorian law. You know, we talk about equity, and there's a lot of repeat in Gallo's briefs about Andina's vexatious, their inflagrant disregard of their own laws. Let's talk about Gallo, under the corporation's code, in Ecuador for 28 years, never appointing an agent to be somebody for service of process in the country of Ecuador. Agent – the brief indicates they did have an agent in – Well, they have a lawyer, Your Honor, but the law, in my understanding, in Ecuador requires that a designated agent be appointed in the country of Ecuador to receive legal service of process. Gallo never had that. If you're right, that's true. I'm thinking more in terms of what appear to be findings in the trial court of misconduct on the part of your client. Do we accept those findings here? Well, the matter's up on appeal, Your Honor. And to my knowledge, I don't believe you're bound by it, but to my knowledge, no court in Ecuador has ever ruled that the curador process per se should have never been used under the circumstance of no legal representative being in place by Gallo in that country. I'm not going to quibble with the court here about, sure, my client maybe should have mailed a copy to Modesto. No question about that. That probably would have been beneficial to everybody, because my client did mail two from Ecuador to Modesto before the lawsuit was ever filed. My understanding of Ecuadorian law, though, is you're supposed to serve the legal representative in the country of Ecuador. Now, Gallo has five lawyers and three law firms in Ecuador. And isn't it coincidental that they've never, in 20 years, appointed a legal representative as required under the corporation law there to receive? You may be right. You may be right. My only question was the findings made by the trial court. Now, is it your response that because that decision of the trial court's on appeal, that those findings really aren't finalized yet, and that we should not look to them? Do I understand that's your argument? Well, I think you can look at them here, Judge, for the purpose of the equitable arguments about injunctive relief here, because I think that's fair and it's on the table. But what I'm really driving at is, yes, it's on appeal, but to my knowledge, no court there has overruled the curador issue. And let me tell you, the other end of it that Gallo doesn't tell you about is that on September 17, 2004, they did send in one of their attorneys at the end of a six-day discovery period. And they did have the right on that date to request an inspection of Andina's books. They did have a right to request documents. My understanding, again, of the Ecuadorian law is that that discovery doesn't have to be completed in that six-day period. They just have to request certain things to be done. Now, Rita Epez, the curador, also did attend, and Gallo did not, after September 17 of 2004, an inspection of my client's books and records by the judge in Ecuador. And in Ecuador, apparently one of the procedures to inspect documents is the court itself goes out and inspects the records, and then the attorneys for either side have a right to participate and be there. Ms. Epez, the curador, was there, but no representative of Gallo bothered to show up at discovery that my client initiated in Ecuador, and they could have also requested that and never did. I think you're moving your argument over to their bad guys, too. Well, I'm sorry, Judge. I'm talking about the findings made in the trial court. And I just don't know how they fit into our decision here. Well, I don't know that they do, Your Honor, but in all candor, I think you're allowed to look at it because what's being done here is the allegations being made that my client has unclean hands, my client is vexatious because it's a – it's sought and pursued its own appeals in the country of Ecuador against a – based on an adhesion contract from a $9 billion-a-year company. And it is pursuing its remedies there. And the findings there made about the curador never revoked or never removed her. In fact, Gallo sought to have a removal, removed her, but never showed up for discovery that went on there. I had thought, Judge, that Ishii, in his order, specifically rejected your argument that this was a contract of adhesion. You know, to be honest, Your Honor, I can't recall off the top of my head. I read the order about two days ago. And maybe I shouldn't use that term. I mean, it was negotiated two times. The – what's happened, Judge, is we now have deposition testimony, and I apologize. I may be interplaying some deposition testimony. I'm reading – this is ER-794, line 22. While the contract is a simple preprinted two-page fill-in-the-blanks-type contract, Adena presents no compelling argument that a contract is an adhesion contract simply because its language is dictated by Gallo and included in their standard preprinted distribution contract. And I apologize, Judge. In the last two weeks, we've had depositions taken of my clients. And I'm referring to something that's not in your record, so I don't know if it's appropriate for me to state that. But the state of the evidence was it was taken or leave it unsigned in the agreement. Well, it's kind of hard to trump, Judge, these findings based on deposition testimony that's not in the record, isn't it? Yeah. And I didn't mean to make a big deal out of using the term adhesion, Your Honor. I apologize. We've had hours and hours of deposition testimony since then. But the issue, too, I was going to just briefly address under 1038A is, you know, there's a clause in there that says that it's, depending upon how one interprets it, that it's not to be applied retroactively. And that clause is part of, I'm sorry, of the repeal. And then 1038A itself gives jurisdiction to Ecuador to hear claims of an Ecuadorian distributor. So, you know, to say that there was no bases, and Gallo is saying basically there is that, that Andina blithely just decided to file an action in Ecuador, I think, is not borne out by what's in your transcript of 1038A or the repeal in 1997 of that. Now, Andina wants to interpret that as saying, well, it only applies if the lawsuit was filed before 1997. I read that particular provision, Your Honors, as stating in the disjunctive that the way one reads it, and I won't take the time to pull it out. It's in your record here. But that these series of things can occur, and that old claims arising under contracts from years before 1997, this law would apply to it. I also, in the record, there's a reference to 1505 of the Civil Code of Ecuador, which was in effect back in 1978. And it stated that it prohibited companies to enter into contracts that established forced foreign jurisdiction over an Ecuadorian distributor. And let me preface it just, Your Honors, a lot of this was not before Judge Ishii, because it was the first hearing out of the box that we were at on the thing. And a lot of these things, he didn't have the benefit or the ability to deal with that we're talking about here. But the discovery issue, I've talked about the curador de ti. But let me just say this about it, because this is a big contention by Gallo that this is unfair. I would submit to Your Honors that it's more protection than we have in our country. Because you know what? If we have a CT systems appointee, that's fine, as we all know, we can serve him. But if a corporation in this state, for example, or a lot of states, doesn't have a CT corporation or a designated agent for service or process, we serve the Secretary of State. And if nobody responds and it's published, there's a default taken in 30 days. Here in the country of Ecuador, rather than Andina, my client, being able to enter a default, at least the court down there appointed another attorney to make an appearance for Andina, or for Gallo. So I would submit under their system that had it happened in this country, with the fact pattern I would give you, we could have entered a default. And that can't happen in Ecuador, and it didn't happen in this case. And by the way, the attorney appointed by Gallo, when he did appear on September 17 of 04, did raise the jurisdictional concerns that in many of these pleadings it stated they were unable to raise, and they have been raised down there. And that was part of the basis for this nullity decision. I'd say this briefly about Seattle Totems. That was a case that dealt with choice of law as a factual distinction, rather than a form selection clause. The Bremen case clearly deals with form selection, but there's no evidence in it about other law from a foreign nation maybe establishing jurisdiction there. The Laker Airways case dealt with a deliberate attempt, apparently, just to stop a lawsuit. And that's what Gallo is doing here, because they want an injunction to stop the lawsuit from going forward in Ecuador. And in closing, I'd say this, Your Honors. I know the remedies you're looking at here, and let me throw one out. And I don't know procedurally whether this is appropriate, but to me, this is not what my normal practice is every day-to-day on international law and conflicts of laws and form selection clauses. But Gallo wants an award entered or a reversal of the injunction, the injunction entered, and or letters derogatory. I would suggest a third alternative, that if this Court is unsatisfied with the evidentiary record because of how it evolved, that it be remanded. If Andina doesn't just get an upholding of the denial of the TRO, that is, that the case be remanded to Judge Ishii for further evidence to be taken, in all fairness to him, because he took the first shot right out of the box, Your Honors, and there's a lot more since then that I think he would have liked to have known. Thank you. First of all, let me see if I can just quickly touch on some points that were raised by counsel and respond to any questions that the panel may have in light of his comments. First of all, with respect to the binding effect of the findings made by the Court in Ecuador, Judge Wallace, I'm not so sure that they're binding on this Court, but I think they're definitely relevant to the issue of comedy and the extent to which there would be interference, undue interference by a court in the United States with that, I mean, to the extent that the form selection clause in and of itself doesn't outweigh issues of comedy. It certainly shows that the courts of Ecuador have had a chance to look at this issue. And in fact, in light of all the pleadings that are being filed by Andina, one might argue that they might even welcome an injunction in this case. Secondly, about the Ecuadorian Corporation's Code to designate an agent, the duty of Gallo to designate the agent, under Article VI of the Civil Code of the Corporation's Code of Ecuador, and you can see that at Excerpt of Record 196, that obligation to designate an agent for service of process only arises if Gallo were to assume obligations in Ecuador. That didn't happen here. Secondly, Article 512, which is also in the record of the Ecuador Code, says that you cannot get a corridor, regardless of whether you have a designated agent, if you know the whereabouts, then a corridor is not proper. And finally, and perhaps most importantly, Your Honors, is the parties agreed in the agreement that that agent would be CT Corporation. Your Honors, I see my time's expired. If I could just have one moment just to sum up. Gallo recognizes that reversal of district court decisions are not taken lightly by this Court, particularly when the decision is the denial of a preliminary injunction. However, there are cases where such a reversal is appropriate, and we would submit that this is one of those cases. We respectfully submit that the decisions, the decision of the district court can have broad implications, as I said, about any company that's doing international business in a form selection clause, because it will basically make them meaningless and it will encourage parties to violate them. We would therefore request that what the court do is reverse the district court and either, and remand it with either instructions that the requested preliminary injunction be entered, or that if it's going to reconsider it, that the court offer and set forth the principles that are to guide the district court in ruling on form selection clauses. As we set forth in the brief, we believe the proper rule is that if there is a valid form selection clause, that constitutes a policy, an important policy that outweighs interests of comity, and that that the form selection clause should be given proper weight and recognition in determining that issue.  Thank you, Your Honor. Roberts. Thank you both for your arguments. It's a very interesting issue, and we'll go wrestle with it. The case just argued will be submitted for decision. The Court will stand in recess for the day. All rise. The court will recess for the day, Your Honor.
judges: Wallace, Hawkins, Thomas